OPINIONS OF THE SUPREME COURT OF OHIO
      The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
      Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
      NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


Hubbard Press, Appellant, v. Tracy, Tax Commr., Appellee.
 [Cite as Hubbard Press v. Tracy (1993),      Ohio St. 3d    .]
Taxation -- Exemption -- R.C. 5715.27 -- Printing plant used
      for printing church offering envelopes not exempt from
      taxation, when.
      (No. 92-1382 -- Submitted February 25, 1993 -- Decided
November 10, 1993.)
      Appeal from the Board of Tax Appeals, No. 87-E-730.
      Appellant, Hubbard Press ("Hubbard"), appeals from the
affirmance by the Board of Tax Appeals ("BTA") of the Tax
Commissioner's denial of Hubbard's application for exemption of
its printing plant from property taxation under R.C. 5715.27(A).
      Hubbard's primary argument for tax exemption is the
doctrine of collateral estoppel.  In Hubbard Press v. Glander
(1951), 156 Ohio St. 170, 46 O.O. 29, 101 N.E.2d 382, exemption
was granted for the  real and tangible personal property which
Hubbard used for conducting its printing operations in Hancock
County.   Hubbard was then, and remains, a not-for-profit
corporation organized "to manufacture, print, publish, sell and
distribute offering envelopes, pledge cards, forms for
accounts, financial records, statements and other supplies for
use by churches and congregations in connection with their
efforts to raise money" for themselves and their "benevolence,
charitable, missionary and religious activities."  (Hubbard
currently prints only offering envelopes.)   Id. at 171, 101
N.E.2d at 383.  Since its original incorporation as an Ohio
nonprofit corporation in 1949, Hubbard has operated as a
division of the Presbyterian Church U.S.A. or one of its
predecessors.  Hubbard enjoyed tax exemption from 1951 until
the Hancock County Auditor reentered the property on the
taxable list for tax year 1983.
      The cause is now before this court upon an appeal as of
right.


      Vorys, Sater, Seymour & Pease, Raymond D. Anderson and
Tony C. Merry, for appellant.
      Lee I. Fisher, Attorney General, and James C. Sauer,
Assistant Attorney General, for appellee.

Per Curiam. The BTA's decision is not unreasonable or unlawful, and it is affirmed.

The BTA found Hubbard was not entitled to tax exemption either on the basis of collateral estoppel or on the basis of R.C. 5709.12 and 5709.121.

In Am. Soc. for Metals v. Limbach (1991), 59 Ohio St.3d 38, 39, 569 N.E.2d 1065, 1066, we attempted to resolve all doubts about the applicability of collateral estoppel:

"The basic elements that must exist before the doctrine can be applied * * * are: (1) an administrative proceeding of a judicial nature, (2) an identity of the parties, and (3) an identity of the issues."

The BTA identified correctly the essential elements of collateral estoppel. There was a hearing before the BTA in 1950 at which the Tax Commissioner and Hubbard were parties. However, it is obvious that the issue now before us involves tax year 1983, and whatever proceedings took place in the 1950 hearing did not concern tax year 1983. Thus, collateral estoppel does not apply. Limbach v. Hooven & Allison Co. (1984), 466 U.S. 353, 104 S.Ct. 1837; 80 L.Ed.2d 356, Commr. of Internal Revenue v. Sunnen (1948), 333 U.S. 591, 68 S. Ct. 715, 92 L.Ed. 898; see, also, State ex rel. Westchester Estates, Inc. v. Bacon (1980), 61 Ohio St.2d 42, 15 O.O. 3d 53, 399 N.E.2d 811, paragraph two of the syllabus. In Hooven & Allison, supra, at 362, 104 S.Ct. at 1843, 80 L. Ed. 2d at 364-365; the United States Supreme Court, in discussing collateral estoppel, stated: "The parties, the tax, and the goods imported and their containers are the same. * * * Collateral-estoppel concepts, therefore, might have an initial appeal" The court then concluded:

"The years involved in this tax case, however, are not the same tax years at issue in Hooven I [Hooven & Allison Co. v. Evatt (1945), 324 U.S. 652, 65 S.Ct. 870, 89 L.Ed. 1252]. Because of this, Commissioner v. Sunnen, supra, is pertinent and, indeed, is controlling. * * * An earlier decision * * *, involving the same facts, questions, and parties but different tax years, was held not to be conclusive under the doctrine of collateral estoppel * * * ." The BTA also supported its decision by citing R.C. 5713.08, which authorizes the county auditor to restore to the tax rolls real or personal property previously exempted.

The other issue before us is compound: (1) Was Hubbard a "charity"? (2) Was its property used in connection with charitable activities by Hubbard itself, or by a charitable institution (the Presbyterian Church)? (3) Was any such charitable use of the subject property "vicarious" and, therefore, removed from the scope of exemption ?

The statutory provisions pertinent to this appeal are:

R.C. 5709.12(B): "* * * Real and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation.* * *"

Former R.C. 5709.121: "Real property and tangible personal property belonging to a charitable * * * institution * * * shall be considered as used exclusively for charitable * * * purposes by such institution * * * if it is either:

"(A) Used by such institution * * *

"* * *

"(2) For other charitable * * * purposes;

"(B) Otherwise made available under the direction or control of such institution * * * for use in furtherance of or incidental to its charitable * * * purposes and not with the view to profit." 133 Ohio Laws, Part III, 2646.

Appellant suggested in its notice of appeal that it was entitled to exemption "because the Subject Property is owned by The Hubbard Press, an Ohio not-for-profit corporation organized by the * * * Presbyterian Church * * * solely to be used as a printing plant" for church purposes. We disagree. The primary question presented is whether the property is used exclusively for charitable purposes.

Hubbard, a division of the Presbyterian Church of the United States, utilized the subject property only for printing envelopes to be used by churches and congregations. There is no showing that those activities were themselves charitable. Lutheran Book Shop v. Bowers (1955), 164 Ohio St.359, 58 O.O. 148, 131 N.E.2d 219. Moreover, any charitable purpose was vicarious. Whether the users of Hubbard's production of church envelopes (churches and congregations) were, through the use of such material, engaged in charitable activities or whether the money collected through the use of such material was employed in some charitable way is immaterial. It is only the use of property in charitable pursuits that qualifies for tax exemption, not the utilization of receipts or proceeds that does so. Seven Hills Schools v. Kinney (1986), 28 Ohio St. 3d 186, 28 OBR 275, 503 N.E.2d 163.

The General Assembly enacted the pertinent statutes to define the scope of authorized exemptions, and structured them to permit avoidance of taxation for eligible entities employing property as the General Assembly contemplated, and in no other fashion or capacity. Our function is to apply the law as written, adhering to a strict construction of exemptions which are in derogation of the basic scheme of taxation. Natl. Tube Co. v. Glander (1952), 157 Ohio St. 407, 47 O.O. 313,, 105 N.E.2d 648.

Hubbard failed to establish that the subject property was used exclusively for charitable purposes. The decision of the BTA ratifying the commissioner's denial of exemption was neither unreasonable nor unlawful, and it is affirmed.

                                        Decision affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, Resnick and F.E. Sweeney, JJ., concur.

Wright and Pfeifer, JJ., dissent.


Pfeifer, J., dissenting. The test used by the majority in this case and by this court previously in Seven Hills Schools v. Kinney (1986), 28 Ohio St. 3d 186, 28 OBR 275, 503 N.E.2d 163, provides an overly restrictive standard to be met before real or personal property can qualify as being "used exclusively for charitable purposes" pursuant to R.C. 5709.12 and R.C. 5709.121.

R.C. 5709.121 provided:

"Real property and tangible personal property belonging to a charitable *** institution *** shall be considered as used exclusively for charitable *** purposes *** if it is ***:

"***

"(B) Otherwise made available under the direction or control of such institution \*\*\* for use in furtherance of or incidental to its charitable \*\*\* purposes and not with the view to profit."

The Seven Hills approach overemphasizes the preclusive language in the clause "not with the view to profit" and ignores the clause "for use in furtherance of or incidental to its charitable \*\*\* purposes," which qualifies property as being charitably used.

I am pursuaded by the dissent in Seven Hills, supra, written by former Justice Holmes, and concurred in by my colleagues, Justices A.W. Sweeney and Douglas.  A more balanced approach is required by the statute.  When revenues received by the owner of property as a result of transactions occuring on the property are devoted exclusively toward paying for overhead costs and funding a purely charitable institution, such as the Presbyterian Church, then the property furthers a charitable interest and is not being used for the profit of private citizens.

A contrary conclusion jeopardizes the charitable-property status of private schools that hold bake sales or a community center that raises money by hosting a monthly spaghetti dinner.

Wright, J., concurs in the foregoing dissenting opinion.